UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JO DEE ANN ENRIQUEZ,<br><br>        Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>Commissioner of the Social Security<br>Administration,<br><br>        Defendant. | CAUSE NO. 1:19-CV-182 DRL |

OPINION & ORDER

The Commissioner has filed a motion to reverse and remand this appeal for further administrative proceedings. The Commissioner concedes that the Administrative Law Judge (ALJ) didn't properly evaluate Dr. H.M. Bacchus, Jr.'s September 2013 consultative examination opinion and Dr. Janis Eiler's November 2018 medical opinion. Jo Dee Enriquez argues that remand is unnecessary and that the case should be reversed with payment of benefits. Ms. Enriquez says this case warrants benefits for two reasons: the ALJ didn't follow the court's prior remand order to evaluate medical opinions properly, and the record contains no potentially conflicting evidence that might support a finding of "not disabled." The court finds that the payment of benefits is not required at this time and remands this case for further proceedings, albeit with instructions.

BACKGROUND

Ms. Enriquez's social security case began in 2012 when she protectively filed an application for Supplemental Security Income (SSI) [R. 153]. Her claim was denied initially and again upon reconsideration [*Id.*]. A hearing was held before The Honorable Maryann Bright who afterwards issued an unfavorable decision [R. 150]. After requesting review, the Appeals Council remanded the case to The Honorable William Pierson (ALJ) [R. 172-75]. The Appeals Council remanded the case because

(1) the decision did not contain an adequate evaluation of the opinion of Dr. Bacchus; (2) the vocational expert's testimony was inconsistent with the residual function capacity; and (3) the decision did not evaluate whether Ms. Enriquez's diagnosis of diabetes mellitus constitutes a severe medically determinable impairment [*Id.*]. ALJ Pierson held a new hearing and then rendered an unfavorable decision, to which the Appeals Council denied review [R. 1, 17].

Ms. Enriquez appealed that decision to this court, where Judge William C. Lee remanded the case for further proceedings because: (1) the ALJ had not properly incorporated his finding of a moderate limitation in concentration, persistence or pace into his hypothetical to the vocational expert; and (2) the ALJ had improperly discounted the opinion of Drs. Bacchus, Eskonen, and Everetts, rendering his decision unsupported by substantial evidence. *Enriquez v. Berryhill*, No. 1:17-cv-12, 2018 U.S. Dist. LEXIS 62522, 24-28 (N.D. Ind. Apr. 13, 2018). On remand, another unfavorable decision followed [R. 1434]. The case returns only to have the parties agree that the ALJ hasn't properly evaluated certain medical opinions. They just disagree about the remedy.

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because Ms. Enriquez did not file exceptions and the Council did not otherwise assume jurisdiction, the court evaluates the ALJ's decision as the Commissioner's final word. *See* 20 C.F.R. § 404.984; *see also Murphy v. Berryhill*, 727 F. Appx. 202, 206 (7th Cir. 2018) (the ALJ's decision is final if the claimant skips the Appeals Council after remand).

The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence

2

and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

That said, this court has the power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings, including the power to remand with instructions for the Commissioner to calculate and award benefits. *See* 42 U.S.C. § 405(g); *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The court may order an award of benefits only if all factual issues have been resolved and "the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord*, 631 F.3d at 415.

## DISCUSSION

On appeal, Ms. Enriquez focuses largely on her reaching capabilities. The ALJ found that Ms. Enriquez can occasionally reach overhead and perform overhead work with her right upper extremity but found she can frequently use her right hand for fine and gross manipulations [R. 1446]. The ALJ did not limit her left upper extremity [*Id.*].

Four medical opinions (retained by the Social Security Administration) note Ms. Enriquez's shoulder and reaching limitations. First, in September 2013, Dr. H.M. Bacchus found that Ms. Enriquez "appear[ed] to have significant pain and deficits in regard to her right shoulder" [R. 946]. Dr. Bacchus opined that Ms. Enriquez had limitations on her ability to reach [*Id.*]. She had deficits in her right shoulder and range of motion as follows: 30° with a normal of 150° abduction; 10° with a normal of 30° adduction; 40° with a normal of 150° forward elevation; 20° with a normal of 80° internal rotation; and 30° with a normal of 90° external rotation [R. 947]. She had pain with palpation and range of motion in her right shoulder [R. 946].

3

Two non-examining state agency physicians echoed in 2013 concerns with Ms. Enriquez's abilities in this regard. In September 2013, Dr. Joshua Eskonen, a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment, relying in part on Dr. Bacchus' opinion [R. 123-134]. He found that Ms. Enriquez was limited to occasional reaching in front and/or laterally and overhead with her right arm [R. 130]. In December 2013, Dr. David Everetts, another non-examining state agency doctor, reviewed the evidence in the file and found the same reaching limitations as Dr. Eskonen [R. 143-44].

Last, in November 2018, after this court's remand, the ALJ requested opinion from Dr. Janis Eiler in advance of the December 2018 administrative hearing [R. 2381]. Dr. Eiler, having reviewed the updated records, found (among other limitations) that Ms. Enriquez can never reach overhead and can otherwise reach only occasionally with both upper extremities [R. 2395]. She thus found bilateral limitations.

Dr. Eiler's opinion imposed greater restrictions than even the state agency physicians in 2013. As a resounding chorus, however, the four physicians opined that Ms. Enriquez had substantial deficits in her ability to reach repetitively, particularly with her right shoulder and arm. Charles McBee, a vocational expert, testified at a prior hearing that either a limitation to occasional reaching or occasional handling and fingering along with the other limitations in the hypothetical that the ALJ adopted as the residual functional capacity would prevent performance of any sedentary work [R. 1425-26]. Similarly, Amy Kutschbach, a vocational expert, testified at the most recent hearing that a limitation to only occasional use of either upper extremity would prevent the performance of any sedentary work [R. 1512-13]. It remains unclear why now, with even greater limitation, if Dr. Eiler is to be credited, the ALJ's ruling remains supported by substantial evidence.

Ms. Enriquez asks the court to order payment of benefits because the ALJ failed to comply with the law of the case. The law of the case doctrine, applicable to judicial review of administrative

decisions, generally requires the ALJ "to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (quoting *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997)). Obduracy alone is not reason enough for an award of benefits. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). The court may remand for benefits if it finds there is no reasonable ground to reject the claim of disability. *See id.* (citing *Wilder*, 153 F.3d at 804).

In the prior district court opinion, Judge Lee reiterated the concept that "ALJ[s] are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Enriquez*, 2018 U.S. Dist. LEXIS 62522 at 27. For example, an ALJ is not qualified to interpret the images of an MRI—that is the role of a medical expert. *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). This prohibition to "playing doctor" is well established in this circuit. *See also Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) (ALJ cannot "play doctor" and contend, without a medical expert, that newer medical records would not have made a difference in result because they showed improvement); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (ALJ's conclusion that the lack of a diagnosis meant complainant was exaggerating pain was not supported by medical evidence in the record).

The Commissioner concedes that the ALJ here neglected to evaluate the opinions of Dr. H.M. Bacchus and Dr. Janis Eiler properly. The court views this concession as wise. It would seem the court wouldn't need to say more, but perhaps given this record the following guidance might prove helpful on this third remand (and second from the court).

It remains unclear what weight the ALJ afforded Dr. Bacchus specific to Ms. Enriquez's use of her upper extremities. He discusses Dr. Bacchus of course, but the decision lacks an "accurate and logical bridge between the evidence and [his] conclusion." *Thomas*, 745 F.3d at 806. He never says what weight he has given Dr. Bacchus' opinion—what he credited and what he did not. *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (finding no "accurate and logical bridge" when ALJ explicitly

5

assigned weight to some medical opinions, but recited other opinions without determining their weight); *Suide v. Astrue*, 371 F. Appx. 684, 690 (7th Cir. 2010) (remand required when the ALJ did not discuss what weight was given to medical reports, making it unclear how the ALJ determined claimant's limitations).

To the extent the court can piece it together, it appears the ALJ exceeded his mandate. In the prior ruling, the ALJ discounted the opinions of Drs. Bacchus, Eskonen, and Everetts due to a lack of diagnostic testing, physical exam findings, and prescribed treatment [R. 37]. Now, after the court's remand, the ALJ finds that Dr. Bacchus did not have imaging for review at his September 2013 consultative examination and further notes that the x-ray results reported by Dr. Barr in March 2013 were "negative" [R. 910, 1453].[1] The ALJ says these things without explaining whether he thus discounted the weight of Dr. Bacchus' opinion. The court can only presume he did.

To the extent the ALJ improperly "played doctor" and analyzed the medical significance of Dr. Barr's imaging without expert opinion, that goes against both the law of this circuit and the law of the case. *See Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (finding the ALJ "played doctor" when he opined that MRI results were "consistent" with complainant's impairments without expert opinion); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJ "played doctor" when ALJ relied on claimant's "unremarkable" MRI results as inconsistent with her complaint of migraines). An x-ray is not the end all be all. It may corroborate complaints, or it might rule out issues and lend support for the ALJ's determination, but "either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion." *Akin*, 887 F.3d at 317-18. To that point, the same report the ALJ cites [R. 910] indicates that an MRI arthrogram would facilitate further evaluation of the shoulder.

---

[1] Dr. Barr reported that the x-rays showed normal glenohumeral joint and acromial humeral distance [R. 910].

Beyond this, the ALJ notes that the claimant's RFC was "not inconsistent" with Dr. Bacchus because, in particular, it limits "[o]ther postural maneuvers" to no more than "occasional performance" [R. 1454], but postural maneuvers don't appear to include reaching capabilities. *See* R. 129-30, 143-44, 2395-96 (medical opinions listing reaching as a manipulative or use of hands limitation, not postural); SSR No. 96-9p, 1996 SSR LEXIS 6 at 21-22 (postural limitations cover activities such as climbing, balancing, kneeling, crouching, crawling, and stooping). The ALJ thus suggests that he accounts for part of Dr. Bacchus' opinion, but then in the next breath says that Dr. Bacchus' findings about diminished right strength and grip "have not otherwise been recorded," and that Ms. Enriquez's "prolonged walking and other activities, including weight training, using a treadmill, and performing yard work . . . support a greater capacity than reflected in Dr. Bacchus' opinion" [R. 1454]. That greater capacity is not explained in terms specific to her upper extremities, or differentiated between lower body range of motion or upper extremity abilities. To that point, walking and treadmill use would have no material bearing on Ms. Enriquez's ability to reach or use her upper extremities in truth, so the court must consider the ALJ's reliance on her other activities.

The ALJ notes new evidence of record that in 2017 Ms. Enriquez engaged in "weight training," went to the gym five times per week, performed yard work, and in July 2017 had been given a goal to perform five "pullups" before her surgery [R. 1452]. The ALJ notes that Ms. Enriquez reported that at least one of these activities—weight training—would increase the pain in her shoulder [*Id.*]. Despite that, he finds this evidence overall cuts against the weight of Dr. Bacchus' opinion [R. 1454]. Ms. Enriquez argues that these facts do not undercut the medical opinions. She argues that her daily activities, such as yard work and weight training, did not occur with enough frequency to be inconsistent with a finding of occasional reaching. Similarly, Ms. Enriquez argues that her pullups were done for therapeutic purposes and were not performed with enough frequency to be inconsistent with a finding of occasional reaching.

7

Ms. Enriquez is correct to point out that an ALJ should hesitate to equate the activities of daily living with those of a full-time job—in fact, this circuit has frequently warned against it. *See, e.g., Hill*, 807 F.3d at 869 (it was unsound for the Commissioner to compare babysitting to working a full-time job). Similarly, an ALJ should be cautious equating therapeutic activities with those of a full-time job as a claimant may do certain activities for therapeutic reasons despite pain. *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Aside from which, the ALJ leaves her weight training or exercises otherwise non-descript—for instance, whether "treadmill/weights," as recorded in a May 2018 record [R. 2253], refers to lower or upper body exercises, or any frequency of reaching out or overhead. The record is undeveloped to explain whether and how he weighed Dr. Bacchus' opinion accordingly.

In addressing Dr. Eiler's more limiting opinion, the ALJ begins by saying the "same is true" [R. 1454]. He notes that Dr. Eiler limited Ms. Enriquez bilaterally—she could never reach overhead and could perform other reaching only occasionally. For any analysis, the ALJ concludes that "shoulder complaints have been primarily right-sided" [R. 1455], never explaining based on the record why that requires Dr. Eiler's opinion to be given less than full weight. The ALJ cites weight training again, but likewise without any explanation or developed record why that requires Dr. Eiler's opinion to be given less than full weight as to the limitations with Ms. Enriquez's upper extremities. He mentions one activity—performing five "pullups" in July 2017 before she undergoes surgery [R. 1455]. In truth, that appears to have been a recommendation by her surgeon at that time because later, in September 2017, she reports an ability to perform only 1.5 pullups [R. 2212, 2215]. The point isn't to nit the record or administrative ruling, but to explain, consistent with the views of both parties here, that Dr. Eiler's opinion has not been properly assessed, particularly when the same records the ALJ cites seems not to support discounting current medical opinion and when those medical records (Ex. 63F) time and again report bilateral shoulder pain and bilateral impingement syndrome [R. 2180-99].

As for the opinions of Drs. Everetts and Eskonen, the ALJ finds their determinations warrant little consideration because "nearly all the pertinent medical evidence" was entered after their respective 2013 opinions. *See* R. 1455; *see also* 20 C.F.R. § 404.1527(c)(6) (for claims filed before 2017, the ALJ can consider the extent to which a medical source is familiar with the other information in the case record). The ALJ may not have been obdurate and "playing doctor" when assigning less weight to these opinions, but reconsideration of their weight may be appropriate on remand depending on the ALJ's treatment of Dr Bacchus' opinion, on which both Drs. Everetts and Eskonen relied, or in consideration in total with Dr. Eiler.

That said, this court believes that the payment of benefits would be inappropriate at this time. This circuit has said that the reversal with payment of benefits is for the unusual case where all factual issues have been resolved and the record requires a finding of disability. *See Kaminski*, 894 F.3d at 875 (7th Cir. 2018) (finding the payment of benefits necessary after giving the treating physician's opinion controlling weight). While Ms. Enriquez has a history of shoulder pain and has medical opinions that might support more restrictive reaching limitations, there also exists in the record other evidence (medical and non-medical) regarding her reaching abilities that the ALJ is allowed to consider. *See, e.g.,* 20 C.F.R. § 404.1527(c)(1-6) (for claims filed before 2017, when weighing a medical opinion, the ALJ may consider, among other factors, an opinion's consistency with the evidence of record and whether it was supported by relevant evidence, such as laboratory testing). It may be that, as the ALJ noted, those other assessments deserve less weight given the record and passage of time [*e.g.*, R. 910, 1349], but that record is for the ALJ to develop and decide. Her previously discussed activities can be considered if the ALJ carefully explores those activities, develops a proper record, and uses them for a proper purpose, such as assessing whether Ms. Enriquez's testimony about the effects of her impairments are credible or exaggerated. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing 20 C.F.R. § 404.1529(c)(3)(i)). The two sides likewise seem to agree that Dr. Eiler's opinions have not

been explored in full, with Ms. Enriquez requesting an opportunity to examine her about her findings. That is yet another reason to remand without an order of benefits. It is the role of the ALJ, not the court, to weigh all this evidence. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000); *see also Underwood v. Astrue*, 430 F. Appx. 532, 535 (7th Cir. 2011) ("the ALJ is the factfinder in a disability proceeding—it is for him to weigh evidence and determine credibility").

The court appreciates that this is effectively the third remand to the ALJ in this case, but the court does not believe the record has reached the stage where no reasonable person could reach an unfavorable decision towards Ms. Enriquez and would benefit still from further proceedings. *See Allord*, 631 F.3d at 416; *see also Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016) (affirming the district court's decision to remand for fourth administrative hearing instead of ordering award of benefits where evidence in the record could be read to undermine the claim for disability). Here the parties agree the ALJ did not properly evaluate the opinions of Drs. Bacchus and Eiler, so the case must be remanded for further administrative proceedings.

## CONCLUSION

Because the parties agree the ALJ did not properly evaluate certain medical evidence, and because payment of benefits is not yet appropriate based on the record of this case, the court GRANTS the Commissioner's motion (ECF 12) and REMANDS the case. With that said, the court ORDERS the ALJ on remand:

(1) to conduct further administrative proceedings consistent with this opinion and that of Judge William C. Lee;

(2) to properly evaluate all medical opinions of record, including the November 2018 medical expert opinion from Dr. Janis E. Eiler and the September 2013 consultative examination opinion from Dr. H.M. Bacchus, Jr., and explain the weight that each opinion is accorded; and

(3) issue a new decision.

SO ORDERED.

May 5, 2020                                             *s/ Damon R. Leichty*
                                                        Judge, United States District Court